**SPURLOCK et al. v. HILBURN.**

No. 925.

Court of Civil Appeals of Texas. Waco.
Sept. 18, 1930.

Rehearing Denied Nov. 20, 1930.

Tom Whipple, of Waxahachie, and Byrd E. White, of Lancaster, for appellants.

Will Hancock and A. R. Stout, both of Waxahachie, for appellee.

BARCUS, J.

Appellee owned a farm in Ellis county which he rented to appellant Spurlock for the year 1928 on a third and fourth basis. In the spring of 1928 Spurlock was required to have money in order for him to properly plant, cultivate, and harvest the 1928 crop. This suit was instituted by appellee to recover judgment for the money which he claimed he furnished Spurlock to aid him in making said crop and for a foreclosure of the statutory landlord's lien on the crops raised by Spurlock on said farm for said year.

Prior to the time appellant Spurlock rented the farm in question he became indebted to White & Co., bankers, in the sum of about $1,500, for which he executed to them his note and gave them a mortgage on all of his teams and tools, together with the crops that he would raise on the farm of appellee for the year 1928. White & Co., bankers. intervened in this suit, setting up their mortgage and claiming same was prior and superior to any claim of appellee. The cause was tried to a jury, submitted on special issues, and resulted in judgment being entered for appellee for the amount the jury found he furnished. Spurlock to aid him in making the crop for 1928, and for foreclosure of the landlord's lien on all crops raised by Spurlock on the land for the year 1928, and giving judgment for White & Co. against Spurlock for the amount of their debt, together with foreclosure of the lien on the stock and farming implements. Appellants contend that the trial court should have instructed a verdict against appellee for a foreclosure of the landlord's lien, on the theory that the evidence shows without dispute that appellee as landlord did not furnish the tenant Spurlock any money with which to raise the crop. We overrule this proposition. The record shows without dispute that Spurlock rented the land in question from appellee on the third and fourth basis, and that in February, 1928, he attempted to borrow from the Citizens' National Bank in Waxahachie money to enable him to plant, harvest, and gather the crop, and was unable to do so; that he then applied to appellee, his landlord, to aid him in getting the necessary money; that appellee, his landlord, went to the Citizens' National Bank in Waxahachie and made arrangements with said bank whereby the tenant Spurlock would execute to him, appellee, notes for whatever amount might be agreed upon, and the bank would then, upon the appellee indorsing same, take the notes as given and loan appellee the amount thereof and would give the money, by direction of appellee, directly to Spurlock. Acting un-

der said arrangement and agreement from time to time, Spurlock executed to appellee his notes in various amounts, each note stating specifically that the same was given by Spurlock, the tenant, to help him to make the crop for the current year on appellee's farm, and that he acknowledged a landlord's lien to exist on said crop to secure the payment thereof, and appellee indorsed same, and then the bank would take the notes and deposit the money in the bank to the credit of J. W. Spurlock. When the notes became due Spurlock failed to pay same, and appellee paid the bank the amount thereof and then instituted this suit. The officers of the Citizens' National Bank testified that they not only refused but that they would not loan the tenant Spurlock any money to enable him to make the crop. Appellee testified that he borrowed the money from the Citizens' National Bank on the notes given him by Spurlock, and furnished same to the tenant Spurlock to enable him to make the crop.

The trial court submitted only two issues: First: "Did plaintiff, S. E. Hilburn, furnish money to defendant, J. W. Spurlock, to aid him in making a crop on land owned by said Hilburn during the year 1928?" Which the jury answered "Yes."

Under the second issue the jury was asked, in event it answered the first issue "yes", to determine the amount of money, including principal, interest, and attorney's fees, Hilburn had furnished Spurlock to aid him in making a crop, which the jury answered "$977.94."

The trial court refused to submit, at appellants' request, the two following issues:

First: "Did plaintiff, S. E. Hilburn, furnish the money represented by the notes that have been introduced and are not in any way denied to J. W. Spurlock to aid or enable him, Spurlock, to make a crop on the lands rented from S. E. Hilburn during the year 1928?"

Second: "Did the Citizens National Bank of Waxahachie, Texas, furnish the money represented by the several notes executed and introduced in evidence to J. W. Spurlock?"

Appellants complain because the trial court refused to submit their said special issue No. 2.

Appellee introduced in evidence the following six notes: Note for $162.50, dated February 4, 1928, due November 4, 1928; note for $210, dated March 16, 1928, due September 16, 1928; note for $104.50, dated May 19, 1928, due October 1, 1928; note for $102.50, dated July 7, 1928, due October 7, 1928; note for $127.10, dated August 7, 1928, due October 6, 1928; note for $142.30, dated August 9, 1928, due October 8, 1928. Each of said notes was payable to appellee, S. E. Hilburn, and bore 10 per cent. interest from date, and provided for 10 per cent. attorney's fees, and were by him indorsed in blank and

contained the specific statement that: "This note is given to help me make my crop for the current year on payee's farm and I acknowledge a landlord's lien to exist on said crop to secure the payment of this note." In addition to said six notes above listed, appellee introduced a note for $105, dated March 27, 1928, due September 27, 1928, signed by appellant J. W. Spurlock and by C. M. Supple, and payable to appellee Hilburn, also a note for $153.75, dated July 24, 1928, due October 15, 1928, signed by J. W. Spurlock, payable to Citizens' National Bank of Waxahachie. Appellants introduced in evidence four notes signed by J. W. Spurlock, payable to appellants White & Co., totaling $1,537.

■ Under special issue No. 2, requested by appellants, the jury, in order to have answered same in the affirmative, would have been required to find that the Citizens' National Bank furnished the money represented by all those notes, or, if applied simply to the notes introduced by appellee, that the bank furnished the money representing the entire eight notes. With reference to the first six notes above listed, there was no controversy as to the manner and method and purpose for which same were executed and handled. The money received therefrom was used by the tenant Spurlock to aid him in making a crop on appellee's land during the year 1928. Officers of the Citizens' National Bank testified that they refused to loan the money to Spurlock, and testified that appellee, Hilburn, the landlord, made arrangements with said bank whereby he (Hilburn) was to take the notes from his tenant, Spurlock, and indorse same and obtain the money from the bank on said notes, and furnish same to the tenant. We think this arrangement, as a matter of law, constitutes Hilburn as furnishing said amount of money to the tenant to aid him in making the crop. As to said six notes the trial court would have been authorized under the undisputed facts to have instructed the jury to return a verdict in favor of appellee.

■ The testimony with reference to the $105 note, signed by J. W. Spurlock and C. M. Supple, tended to show that said money was used by the tenant Spurlock to buy a cow and some hogs. The testimony relative to the note for $153.75 tended to show that it was intended that said note should have been made payable to S. E. Hilburn, instead of being made payable to the Citizens' National Bank, and that the money derived therefrom was used by Spurlock in making his crop. It is apparent from the finding of the jury, since they allowed only $977.94 for the principal, interest, and attorney's fees on the notes representing the money which had been furnished by Hilburn to Spurlock, that the jury excluded therefrom both the $105 note signed by C. M. Supple and the

**398**

$153.75 note payable to the Citizens' National Bank. It therefore appears that any errors the trial court may have committed in the submission of the issues become and are harmless, because no possible injury could have been suffered by the appellants. ·

■ If it could be said we were mistaken in the above views, clearly, the trial court should not have given the special issue No. 2 requested, because the evidence was undisputed that appellants White & Co. furnished the money on the notes signed by Spurlock, payable to them, that had been introduced in evidence, and the issue as framed limited the jury to find whether all of the money in bulk had been furnished by the Citizens' National Bank. Neither the pleadings nor the evidence would have supported an affirmative finding thereto.

■ We think the trial court properly submitted to the jury the question, first, as to whether Hilburn furnished any money to the tenant to aid him in making the crop, and, second, if he did furnish any, then to determine the amount thereof.

■ Appellants further complain of the failure of the trial court to define the word "furnish" in the special issue No. 1, as submitted by the court, their contention being that said word is technical and was calculated to confuse the jury, and that, in order for the jury to properly understand the issue, the trial court should have given some definition thereof. We think the same, if error, was harmless, since the jury only found appellee furnished the amount about which there was no dispute. We are of the opinion, however, that there was no error in the action of the trial court in refusing to define the word "furnish" as used in said special issue. Article 5222 of the Revised Statutes provides that the landlord shall have the preference lien for all money furnished by the landlord to the tenant to make and harvest the crop provided same was necessary for said purpose. While our courts have by virtue of article 2189, Revised Statutes, gone a long way in requiring the trial courts to define various words, phrases and expressions used in special issues, we do not think the word "furnish," as used in this case, is of such indefinite or uncertain meaning as would require the trial court to attempt to define same. In Robertson & Mueller v. Holden (Tex. Com. App.) 1 S.W.(2d) 570, the court laid down this general rule: "In the nature of things, the statute has not attempted to declare what 'legal terms' shall be explained or defined further than 'shall be necessary to enable the jury to properly pass upon and render a verdict on such issues.' Reasonable necessity, considering the term or terms used, then, should be the test. Ordinary words of simple meaning, of course, need not be defined."

In Walker v. Texas Mexican Railway Company (Tex. Civ. App.) 27 S.W.(2d) 574, 578, the court used this language: "While the court is required to 'submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict,' * * * there is no obligation imposed upon the court to give definitions of ordinary words and phrases."

In Bishop v. Millers' Indemnity Underwriters (Tex. Civ. App.) 254 S. W. 411 (error dismissed), and in Employers' Casualty Co. v. Scheffler (Tex. Civ. App.) 20 S.W.(2d) 833, where the issue was submitted as to whether the injured party in a suit for compensation was totally incapacitated for work, the courts held that the expression "total incapacity" was not such a technical expression as required the court to define same.

In Walsh v. Schingler (Tex. Civ. App.) 14 S.W.(2d) 872 (error refused), where the court submitted the issue to the jury as to whether certain contracts made between the parties were a subterfuge and intended to evade the statute against usury, the court held that it was not error for the trial court to refuse to define the word "subterfuge," because the word was of such common use and ordinary meaning that it could be readily understood by the average juror.

In Dunlop Tire & Rubber Company v. Teel (Tex. Civ. App.) 14 S.W.(2d) 104, where the court in its special issues asked the jury if certain agreements to pay debts were part of the consideration for the contracts, the court held that it was not error for the trial court to refuse to define the word "consideration" because said word has a plain and simple meaning as commonly used, and especially would the jury need no further instructions as to its meaning on view of the fact that the consideration named is clearly indicated in the charge.

In Westchester Fire Ins. Co. v. Dickey (Tex. Civ. App.) 246 S. W. 730 (error dismissed), where the court submitted the issue as to whether plaintiffs substantially performed the provisions of the insurance policy, the court held that it was not error for the trial court to refuse to define the word "substantially," for the reason that it was not a legal term as contemplated by the statute, and, further, because the word is in common use, and the definition offered or any other would not have likely assisted a jury in arriving at a proper verdict.

In Bay Lumber Company v. Snelling (Tex. Civ. App.) 205 S. W. 763, the court submitted an issue to the jury as to whether there was a bona fide dispute between the parties as to the amount due. The court held that it was not error for the trial court to refuse to define what is meant by the expression "bona fide," because said words were so simple that.

the jury did not need any definition to enable them to understand their meaning.

In a contract between the landlord and the tenant with reference to the landlord furnishing money or supplies to the tenant to aid him in making a crop, we think that the word "furnish," when used in said connection, is of such common and ordinary meaning that any juror would understand same and know what was meant thereby, and no definition that we have been able to find could throw any light on or be more explicit or more commonly used than the word itself.

We have carefully examined all of appellants' assignments of error, and same are overruled. The judgment of the trial court is affirmed.